[Cite as *Hylbert v. WEB Bldg. & Dev., Inc.*, 2014-Ohio-2456.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| KATHLEEN V. HYLBERT, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2013-P-0095** |
| WEB BUILDING AND DEVELOPMENT, INC., | : | |
| | : | |
| Defendant, | : | |
| WILLIAM E. BILLOCK, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Portage County Court of Common Pleas.
Case No. 2011 CV 1090.

Judgment: Affirmed.

*Aaron J. Heavner* and *Chad E. Murdock*, 228 West Main Street, P.O. Box 248, Ravenna, OH 44266 (For Plaintiff-Appellant).

*Matthew P. Mullen*, Krugliak, Wilkins, Griffiths & Dougherty Co., LPA, 158 North Broadway Street, New Philadelphia, OH 44663 (For Defendant-Appellee).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant, Kathleen V. Hylbert, appeals from the February 27, 2013 judgment of the Portage County Court of Common Pleas, granting the motion for summary judgment of appellee, William E. Billock, as to his personal liability. For the following reasons, the judgment of the trial court is affirmed.

{¶2} Sometime around the year 2000, appellant and her parents began planning to move back to the 50-acre farm where appellant's father grew up, located in Rootstown, Ohio. Appellant and her parents decided to build two homes on the farm site—one for appellant and one for her parents. In their search for a builder, appellant's parents were referred to appellee who owned WEB Building. Soon thereafter, both appellant and her parents entered into separate contracts with WEB Building for a pair of new homes to be built on the farm site.

{¶3} The two contracts were substantially similar to each other. The first contract was "by and between" WEB Building and appellant's parents, while the second contract was "by and between" WEB Building and appellant. The contracts were both signed as being approved by William Billock, President, as Agent of WEB Building. The contracts specified how the homes were to be built, the materials to be used, and the time by which the homes were to be completed. In addition, the contract included a warranty, which in its relevant portion stated, "[c]ontractor warrants all work for a period of twelve months following completion. All work to be completed in a workmanlike manner according to standard practice." In August 2002, appellant's parent's home was completed ("3612 home"). By this point, appellant's father had passed away, and appellant moved into the 3612 home with her mother who required constant care. A few weeks later, appellant's own home was completed ("3598 home"); however, appellant remained living at the 3612 home in order to care for her mother. The 3598 home remained unoccupied.

{¶4} Appellant began noticing allegedly deficient construction soon after completion of the two homes. These defects included cracks in the ceilings and walls,

2

poor quality painting, a leaky door, and a large crack running through the foyer of the 3598 home. At times, water apparently entered the 3598 home through the crack in the concrete slab floor.

{¶5} Appellant contacted appellee about the alleged defects in construction several times. Appellant contends that the repairs requested were not made or, in the case of the leaky door, not made properly.

{¶6} Acting on her belief that the homes were improperly constructed, appellant hired an architect to inspect the homes. The architect inspected the home and noted several deficiencies. These included absence of a weather-resistant barrier, absence of flashing at windows and doors, improperly-designed heating systems, insufficient insulation, and a cracked concrete slab floor. Overall, the architect found several problems with the homes that showed a general lack of quality in the construction.

{¶7} In July 2005, appellant's mother passed away, at which time appellant inherited a one-half interest in the 3612 home. Appellant then purchased the remaining one-half interest from her brother.

{¶8} In November 2005, appellant moved into the 3598 home where she lived until August 2008. At that point, appellant moved back into the 3612 home and rented the 3598 home to a tenant. That tenant moved out in August 2010. Since August 2010, the 3598 home has not been occupied.

{¶9} On August 19, 2011, appellant filed a two-count complaint against WEB Building and Development, Inc. ("WEB Building") and appellee. Appellee and his wife incorporated WEB Building in 1988. Appellee was WEB Building's President until the

3

company dissolved in January 2011. Appellee and WEB Building filed their answers on September 6, 2011.

{¶10} On February 2, 2012, appellee filed his first motion for summary judgment. The trial court overruled this motion on March 28, 2012. On August 14, 2012, appellee filed his second motion for summary judgment. This motion was granted in favor of appellee on February 27, 2013. The trial court's judgment ordered, in part, that "the action against Defendant William Billock is dismissed at Plaintiff's cost."

{¶11} On October 18, 2013, appellant settled her remaining claims against WEB Building. Appellant's stipulated dismissal stated that "[t]his dismissal does not include Plaintiff's claims against Defendant William E. Billock, which this Court dismissed in a February 27, 2013 Order (that with these dismissals is now a final appealable order)."

{¶12} Appellant timely appealed the summary judgment order and sets forth two assignments of error.

{¶13} Appellant's first assignment of error states:

{¶14} "The trial court committed prejudicial error in summarily dismissing Billock by finding that he acted in a representative capacity for WEB Building."

{¶15} Specifically, appellant argues there was an implied-in-fact contract between her and appellee or, alternatively, that promissory estoppel applied.

{¶16} We review a trial court's decision on a motion for summary judgment de novo. *U.S. Bank Natl. Assn. v. Martz*, 11th Dist. Portage No. 2013-P-0028, 2013-Ohio-4555, ¶10, citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter

4

of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor." Civ.R. 56(C).

{¶17} The law is clear that for a valid contract there must be a meeting of the minds of the parties, and there must be an offer on one side and an acceptance on the other. *Noroski v. Fallet*, 2 Ohio St.3d 77, 79 (1982). In an implied-in-fact contract, the meeting of the minds "is shown by the surrounding circumstances which make it inferable that the contract exists as a matter of tacit understanding." *Rice v. Wheeling Dollar Sav. & Trust Co.*, 155 Ohio St. 391, 397 (1951).

{¶18} In his second motion for summary judgment, appellee argued there was no evidence that he ever accepted personal responsibility or liability or formed any contract individually with appellant. Instead, appellee contends that any assurances made to appellant regarding repairs to the two homes were only made in his capacity as president of WEB Building. The record supports appellee's argument.

{¶19} Construing the evidence most strongly in appellant's favor, there is only one possible conclusion: that appellee never took any steps to bind himself, in his personal capacity, to appellant. Appellee took no action that could lead to an inference that a contract was formed as a matter of tacit understanding between himself and appellant. Rather, any assurance that appellee gave to appellant was given in his capacity as president of WEB Building. In her deposition, appellant admits as much, stating she believed appellee's company would address any issues and that appellee never told her that he would do this individually. Thus, there is no genuine issue of

5

material fact as to the issue of whether appellee bound himself to appellant through an implied-in-fact contract.

{¶20} Additionally, the theory of promissory estoppel does not establish appellee's personal liability. Promissory estoppels applies "where there is '(1) a clear and unambiguous promise; (2) reliance upon the promise by the person to whom the promise is made; (3) reliance is reasonable and foreseeable; and (4) the party seeking to enforce the agreement is injured as a result of its reliance.'" *Huntington Natl. Bank v. Antrobius*, 11th Dist. Portage No. 2012-P-0036, 2012-Ohio-5936, ¶31, quoting *Stonecreek Prop. LTD. v. Ravenna Sav. Bank*, 11th Dist. Portage No. 2002-P-0129, 2004-Ohio-3679, ¶48. Appellee never made a clear and unambiguous promise to appellant that he would be personally responsible for WEB Building, as indicated above. Furthermore, any contention by appellant that appellee would repair the homes in his individual capacity, and that appellant relied on that and was injured as a result, is not reasonable. At all times appellee presented himself as an officer of WEB Building. Any promise made to repair the homes was between appellant and WEB Building.

{¶21} As appellee acted in his representative capacity at all times, appellee was entitled to summary judgment. Accordingly, appellant's first assignment of error is not well taken.

{¶22} Appellant's second and final assignment of error states:

{¶23} "The trial court's finding that Hylbert has standing to assert a breach of contract claim on only the undivided one-half interest she inherited from her parents does not apply to her claim against Billock."

{¶24} The trial court's judgment states that "the action against Defendant William Billock is dismissed at Plaintiff's cost." By fully dismissing the claims against appellee, the trial court found that appellant had no claim against appellee in his individual capacity. As set forth in the analysis under the first assignment of error, we affirm that dismissal.

{¶25} As a result, we need only address appellant's second assignment of error if we found merit in the first assignment of error. The dismissal of all claims against appellee renders moot the issue of standing to sue appellee for only a portion of the 3612 home.

{¶26} As neither of appellant's assignments of error is well taken, the decision of the Portage County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J.,

COLLEEN MARY O'TOOLE, J.,

concur.